1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID M. CATHCART, et al.,

      Plaintiffs,

  v.

SARA LEE CORPORATION, et al.,

      Defendants

_____/

No. C-09-5748 MMC

**ORDER GRANTING DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT; DENYING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT; VACATING DECEMBER 2,
2011 HEARING**

17
18
19
20
21
22
23
24
25
26
27
28

     Before the Court are two motions:  (1) "Motion for Partial Summary Judgment on
Plaintiffs' State Law Overtime Claims," filed August 19, 2011 by defendants Sara Lee
Corporation, Sara Lee Bakery Group, and Earthgrains Baking Companies, Inc.; and
(2) "Motion for Partial Summary Judgment on Collective Bargaining Exemption," filed
September 9, 2011 by plaintiffs David M. Cathcart, James H. Whitehead, Robert W.
Decker, and Dale Baldisseri.  The motions have been fully briefed.  Having read and
considered the papers filed in support of and in opposition to the motions, the Court deems
the matters suitable for decision on the parties' respective written submissions, VACATES
the hearing scheduled for December 2, 2011, and rules as follows.

//
//
//

1

**BACKGROUND**

2    Each plaintiff is or was employed by defendants[1] as a Route Sales Representative

3    ("RSRs"), a job classification also known as Driver-Salesman.  In the operative complaint,

4    the Second Amended Complaint ("SAC"), plaintiffs allege five causes of action.  In the First

5    Claim for Relief, plaintiffs allege, inter alia, that they "very frequently worked more than [ ]

6    40 hours per week and more than 8 hours per day" (see SAC ¶ 23), and that defendants

7    "did not pay, and continue not to pay" plaintiffs overtime compensation required by

8    California law (see SAC ¶ 24).

9    The parties' respective motions address plaintiffs' claim for overtime compensation

10   under California law, which claim, as noted, is included in the First Claim for Relief.  More

11   specifically, the motions address whether defendants can establish that plaintiffs are

12   exempt employees under California's overtime compensation laws.

13

**LEGAL STANDARD**

14   Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant

15   summary judgment "if the pleadings, the discovery and disclosure materials on file, and any

16   affidavits show that there is no genuine issue as to any material fact and that the movant is

17   entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).

18   The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986),

19   Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co.

20   v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary

21   judgment show the absence of a genuine issue of material fact.  Once the moving party

22   has done so, the nonmoving party must "go beyond the pleadings and by [its] own

23   affidavits, or by the depositions, answers to interrogatories, and admissions on file,

24   designate specific facts showing that there is a genuine issue for trial."  See Celotex, 477

25   U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried

26

27   [1]Plaintiffs allege that all three defendants are/were joint employers, whereas defendants assert that only Earthgrains Baking Companies, Inc. is/was the employer.  For purposes of the instant motions, however, defendants assume that plaintiffs are/were jointly employed by all defendants.  (See Defs.' Mot. at 1:26-28, 2:26-28.)

28

1    its burden under Rule 56(c), its opponent must do more than simply show that there is

2    some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "If the

3    [opposing party's] evidence is merely colorable, or is not significantly probative, summary

4    judgment may be granted."  Liberty Lobby, 477 U.S. at 249-50 (citations omitted).

5    "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light

6    most favorable to the party opposing the motion."  See Matsushita, 475 U.S. at 587

7    (internal quotation and citation omitted).

8                                              **DISCUSSION**

9          Section 510(a) of the California Labor Code, which defines what constitutes overtime

10   hours and sets the rate of pay applicable to overtime work, provides as follows:

11          Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in
            one workday and any work in excess of 40 hours in any one workweek and the first
12          eight hours worked on the seventh day of work in any one workweek shall be
            compensated at the rate of no less than one and one-half times the regular rate of
13          pay for an employee.  Any work in excess of 12 hours in one day shall be
            compensated at the rate of no less than twice the regular rate of pay for an
14          employee.  In addition, any work in excess of eight hours on any seventh day of a
            workweek shall be compensated at the rate of no less than twice the regular rate of
15          pay of an employee.  Nothing in this section requires an employer to combine more
            than one rate of overtime compensation in order to calculate the amount to be paid
16          to an employee for any hour of overtime work.  The requirements of this section do
            not apply to the payment of overtime compensation to an employee working
17          pursuant to any of the following:
            (1) An alternative workweek schedule adopted pursuant to Section 511.
18          (2) An alternative workweek schedule adopted pursuant to a collective bargaining
            agreement pursuant to Section 514.
19          (3) An alternative workweek schedule to which this chapter is inapplicable pursuant
            to Section 554.
20
     See Cal. Lab. Code § 510(a).
21
            Section 514, the statute on which defendants rely, provides as follows:
22
            Sections 510 and 511 do not apply to an employee covered by a valid collective
23          bargaining agreement if the agreement expressly provides for the wages, hours of
            work, and working conditions of the employees, and if the agreement provides
24          premium wage rates for all overtime hours worked and a regular hourly rate of pay
            for those employees of not less than 30 percent more than the state minimum wage.
25
     See Cal. Lab. Code § 514.
26
            Defendants argue that if an employee is covered by a collective bargaining
27
     agreement ("CBA") that includes the provisions identified in § 514, the employee is exempt
28

                                                     3

1  from the requirements set forth in § 510(a).  Plaintiffs argue that such an employee is not

2  exempt from the requirements set forth in § 510(a) unless the employee works pursuant to

3  an "alternative workweek schedule," see Cal. Lab. Code § 510(a)(2), which is defined as

4  "any regularly scheduled workweek requiring an employee to work more than eight hours in

5  a 24-hour period," see Cal. Lab. Code § 500(c) (defining "alternative workweek schedule").

6  **A.  Section 514**

7       Defendants offer evidence, undisputed by plaintiffs, that during the course of each

8  plaintiffs' employment, he was subject to the terms of a CBA between Earthgrains Baking

9  Companies, Inc. and thirteen local unions affiliated with the International Brotherhood of

10  Teamsters (see Waltz Decl. ¶ 6), specifically, the Master Sales Agreement in effect from

11  April 15, 2005 through October 2, 2010 (see id. Ex. A), and the Master Sales Agreement in

12  effect October 3, 2010 through September 23, 2013 (see id. Ex. B) (collectively, "the

13  CBA").[2]

14       Defendants contend, and plaintiffs do not disagree, that the CBA satisfies the

15  requirements set forth in § 514.  The Court agrees.

16       First, the CBA "expressly provides for the wages, hours of work, and working

17  conditions" of RSRs.  See Cal. Lab. Code § 514.  Specifically, the CBA provides for a

18  "weekly base" wage, which wage varies depending on the experience of the RSR and the

19  year in which the RSR works (see Waltz Ex. A ¶ 10), provides for payment of specified

20  "commissions" on "all net weekly sales" (see id. Ex. A ¶ 11), provides that "[e]ight (8) hours

21  or less shall constitute a day's work, which shall be completed within a consecutive period

22  of nine (9) hours" (see id. Ex. A ¶ 5.A),[3] and provides the working conditions of RSRs (see,

23  e.g., id. Ex. A ¶ 5.D (stating work day "shall not start earlier than 4:00 a.m. and shall not

24  end later than 5:00 p.m."), id. Ex. A ¶ 7 (setting forth seniority rules), id. Ex. A ¶ 12 (limiting

25

26       [2]Defendants assert, and plaintiffs do not disagree, that the provisions of the two
     Master Agreements are, for purposes of the instant motions, essentially indistinguishable.
27  Accordingly, the Court hereafter cites to the provisions of the first of the two CBAs.

28       [3]The CBA provides that "[i]t is understood that overall clock time shall include one
     hour per day for meal period and personal time."  (See id.)

1   circumstances in which employer may engage in "route reorganization"), id. Ex. A ¶¶ 20, 21

2   (providing for paid holidays and vacation).

3        Second, the CBA "provides premium wage rates for all overtime hours worked."

4   See Cal. Lab. Code § 514.  Specifically, the CBA provides for an "overtime rate" of "one

5   and one-half times (1 1/2) the regular, straight-time hourly rate of pay," which hourly rate

6   varies based on the year in which the pay is earned.  (See Waltz Ex. A ¶ 9.A.)[4]

7        Third, the CBA provides "a regular hourly rate of pay . . . of not less than 30 percent

8   more than the state minimum wage."  See Cal. Lab. Code § 514.  In particular, the CBA

9   provides for a weekly base rate that differs each year, the lowest of which for the time

10  period potentially applicable to the instant action is $476.00,[5] the rate in effect for the one-

11  year period beginning September 30, 2007 (see Waltz Decl. Ex. A ¶ 10.A), which weekly

12  rate equates to a regular hourly rate of $11.90.  See Cal. Lab. Code § 515(d) ("For the

13  purpose of computing the overtime rate of compensation required to be paid to a

14  nonexempt full-time salaried employee, the employee's regular hourly rate shall be 1/40th

15  of the employee's weekly salary.").  Beginning January 1, 2008, the state minimum wage

16  has been $8.00, and was lower before that date.  See Cal. Lab. Code § 1182.12.  Even

17  assuming the lowest possible regular hourly rate under the CBA ($11.90) and the highest

18  possible state minimum wage ($8.00) was applicable for the entire potentially relevant time

19  period, such hourly rate under the CBA exceeds the state-mandated minimum hourly rate

20  by more than 30 percent ($8.00 x 1.30 = $10.40).

21        Accordingly, the Court finds the CBA meets the requirements set forth in § 514.

22

23  _____

24       [4]Defendants interpret the CBA as requiring payment of the overtime rate for all hours
     worked in excess of eight per day, "including any time worked during the one-hour period
     designated each work day for 'meal period and personal time.'"  (See Defs.' Mot. at 11:7-
25   10.)  In their opposition, plaintiffs deny that defendants in fact paid plaintiffs for time worked
     during the above-referenced meal period and personal time.  As plaintiffs acknowledge,
26   however, whether they were paid overtime is "completely immaterial" to the instant motions.
     (See Pls.' Opp. at 11:16-19.)

27       [5]Plaintiffs' initial complaint was filed on December 8, 2009.  Plaintiffs seek overtime
     compensation for a period beginning four years before December 8, 2009 (see SAC ¶ 13),
28   i.e., December 8, 2005.

1    **B. Section 510(a)(2)**

2         The parties disagree as to whether § 510(a)(2) limits the applicability of the

3    exemption provided in § 514.

4         As set forth above, § 510(a) first defines the hours and/or days of work that are

5    considered to be overtime and sets forth the amount of compensation due when an

6    employee works overtime.  The statute then states that "[t]he requirements of this section

7    do not apply to the payment of overtime to an employee" who works pursuant to one of

8    three specified types of "alternative workweek schedule[s]."  See Cal. Lab. Code § 510(a).

9    As noted, the first specified type is an "alternative workweek schedule adopted pursuant to

10   Section 511," see Cal. Lab. Code § 510(a)(1),[6] the second is an "alternative workweek

11   schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514,"

12   see Cal. Lab. Code § 510(a)(2), and the third is an "alternative workweek schedule to

13   which [the] chapter is inapplicable pursuant to Section 554," see Cal. Lab. Code

14   § 510(a)(3).[7]

15        Plaintiffs, as noted, argue the exemption provided in § 514 does not apply to an

16   employee covered by a CBA unless the employee works pursuant to an alternative

17   workweek schedule.  In other words, according to plaintiffs, § 510(a)(2) and § 514 both

18   must be satisfied before an employee is deemed exempt.  Thus, under plaintiffs'

19   interpretation, if an employee covered by a CBA is regularly scheduled to work eight hours

20   per day, but, in fact, works more than eight hours on any given day, the employee is not

21   exempt and must be paid for the additional hours pursuant to the requirements of § 510(a)

22

23        [6]Section 511 provides that "upon the proposal of an employer" and with "approval in
24   a secret ballot election by at least two-thirds of affected employees," employees may
     "adopt a regularly scheduled alternative workweek that authorizes work by the affected
25   employees for no longer than 10 hours per day within a 40-hour workweek without the
     payment to affected employees of an overtime rate of compensation."  See Cal. Lab. Code
26   § 511(a).

27        [7]Section 554 provides that "this chapter," i.e., §§ 500-558 of the Labor Code, "shall
     not apply to any person employed in an agricultural occupation, as defined in Order No. 14-
28   80 (operative January 1, 1998) of the Industrial Welfare Commission."  See Cal. Lab. Code
     § 554.

1    rather than pursuant to the terms of the CBA.[8]

2        Defendants, by contrast, argue that § 510(a)(2) is not a limitation on the applicability

3    of §514, but, rather, clarifies § 514's requirement that a CBA provide for "premium wage

4    rates for all overtime hours worked." See Cal. Lab. Code § 514.  According to defendants,

5    § 510(a)(2) and § 514, read together, provide that the term "overtime hours," for purposes

6    of § 514, is not limited to time worked in excess of eight hours a day; rather, parties to a

7    CBA may define "overtime hours" as hours worked in excess of an alternative workweek

8    schedule.  Thus, under defendants' interpretation, if the parties to a CBA agree that

9    covered employees will work an alternative workweek schedule, for example, ten hours per

10   day/four days per week, the parties to the CBA could further agree that such employees

11   would not be entitled to overtime compensation unless the employees worked more than

12   ten hours on any given day or worked an additional day in the week.

13       When interpreting a California statute, a district court applies California's "rules of

14   statutory interpretation."  See Bass v. County of Butte, 458 F.3d 978, 981 (9th Cir. 2006).

15   Under California law, a court must give statutory language "its usual, ordinary import and

16   accord[ ] significance, if possible, to every word, phrase and sentence in pursuance of the

17   legislative purpose."  See Dyna-Med, Inc. v. Fair Employment and Housing Comm'n, 43

18   Cal. 3rd 1379, 1386-87 (1987).  "A construction making some words surplusage is to be

19   avoided."  Id. at 1387.  "The words of the statute must be construed in context, keeping in

20   mind the statutory purpose, and statutes or statutory sections relating to the same subject

21   must be harmonized, both internally and with each other, to the extent possible."  Id.

22   //

23   //

24   //

25

26       [8]In support of their argument, plaintiffs cite Wylie v. Foss Maritime Co., 2008 WL
     4104304 (N.D. Cal. 2008).  Wylie, however, is distinguishable.  In Wylie, the employer took
27   the position that its employees were exempt because the employees in fact "work[ed] an
     alternative workweek schedule"  See id. at *15.  Because the employer therein did not
28   make the argument made by defendants herein, the district court did not consider the issue
     raised by the instant motions.

1    Applying the above-described rules of statutory interpretation, the Court finds

2  defendants' construction of § 510(a)(2) is correct.[9]  As noted, a CBA, for purposes of

3  § 514, must provide for "premium wage rates for all overtime hours worked."  See Cal. Lab.

4  Code § 514.  The Ninth Circuit, applying California law, has held that "[o]vertime hours are

5  defined in Section 510."  See Gregory v. SCIE, LLC, 317 F. 3d 1050, 1053 n.4 (9th Cir.

6  2003).  Read in context, § 510(a)(2) clarifies that if the parties to a CBA agree that covered

7  employees will work pursuant to an alternative workweek schedule, the definition of

8  overtime hours set forth in the first part of § 510(a) does not apply to such employees;

9  rather, under such circumstances, overtime hours would be the hours worked in excess of

10  those in the alternative workweek schedule.  In other words, if the parties to a CBA agree

11  to an alternative workweek schedule, the CBA, rather than the first part of § 510(a)(1), will

12  define what work constitutes "overtime hours" for purposes of § 514.  Such an

13  interpretation, in accordance with California's rules of statutory interpretation, gives

14  meaning to both § 510(a)(2) and § 514.  See Dyna-Med, 43 Cal. 3d at 1386-97.  By

15  contrast, plaintiffs' interpretation runs afoul of such rules, as it ignores the plain language of

16  § 514, which unambiguously states that § 510 "do[es] not apply to an employee covered by

17  a valid [CBA]" that includes the provisions and protections set forth in § 514.

18    A review of the legislative history and the history of wage and hour regulation

19  likewise supports defendants' interpretation.  See id. at 1387 ("Both the legislative history of

20  the statute and the wider historical circumstances of its enactment may be considered in

21  ascertaining the legislative intent.").

22  //

23  ———————————

24    [9]Defendants' alternative argument, that plaintiffs work/worked pursuant to an
alternative workweek schedule, is not persuasive.  Defendants observe that the CBA
25  allows RSRs to work "a maximum of eleven (11) hours overall clock time (including meal
period) per day," (see Waltz Decl. Ex. A at 9), and offer evidence that plaintiffs frequently
26  worked more than forty hours per week (see id. Decl. Ex. C).  As noted above, however,
the CBA provides that "[e]ight (8) hours or less shall constitute a day's work."  (See id. Ex.
27  A at 8, Ex. B at 8.)  Although defendants' evidence supports a finding that plaintiffs, in
practice, often work or worked more than eight hours a day, defendants offer no evidence
28  to support a finding that any plaintiff has ever been "regularly scheduled" to work more than
eight hours in a day.  See Cal. Lab. Code § 500(c).

Both § 510 and § 514 were enacted as part of the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999 ("1999 Act").  See 1999 Cal. Stat., ch. 134, §§ 1-23.  The 1999 Act, however, was not the first time California defined overtime and provided for an exemption from such definition for employees governed by certain types of collective bargaining agreements.  Beginning in 1913, California law setting the conditions of employment was generally contained in regulations enacted by the Industrial Wage Commission ("IWC").  See Collins v. Overnite Transportation Co., 105 Cal. App. 4th 171, 174 (2003).  Pursuant to its authority, the IWC promulgated fifteen "wage orders," each of which applied to a separate industry or occupation.  See id. at 175.  Each wage order set forth, inter alia, a definition of overtime hours and included an exemption from such definition for workers covered by certain CBAs.  For example, the wage order applicable to the "manufacturing industry," effective January 1, 1998, provided in relevant part as follows:

> No employee eighteen (18) years of age or over shall be employed more than forty (40) hours in any workweek unless the employee receives one and one-half (1 1/2) times such employee's regular rate of pay for all hours worked over forty (40) hours in the workweek. No overtime pay shall be required for hours of work in excess of any daily number.
>
> . . . .
>
> . . . [T]his section shall not apply to any employee covered by a collective bargaining agreement if said agreement provides premium wage rates for overtime work and a cash wage rate for such employee of not less than one dollar ($1.00) per hour more than the minimum wage.

See former 8 Cal. Code Reg. § 11010(3).[10]

Where the conditions of employment have been governed by statute, similarly worded exemptions have been included.  For example, with respect to persons employed in "underground mines" and in "smelters and plants for the reduction or refining of ores or metals," the California Labor Code provided, and continues to provide, that such persons "may not be employed for a period that exceeds eight hours within any 24-hour period and

---

[10]The version of § 11010 then in effect can be found at http://www.dir.ca.gov/iwc/Wageorders1998/IWCarticle1.html.

1    the hours of employment of any workday shall be consecutive, excluding intermissions for

2    meals," see Cal. Lab. Code § 750, but further provided, and continues to provide, that such

3    persons "may be employed for a period that exceeds eight hours within a 24-hour period

4    . . . [i]f the employer and a labor organization representing employees of the employer

5    have entered into a valid collective bargaining agreement that expressly provides for the

6    wages, hours of work, and working conditions of the employees," see Cal. Lab. Code

7    § 750.5.[11]

8         Thus, prior to enactment of the 1999 Act, California defined overtime hours, either

9    by regulation or by statute, and also provided an exemption for employees covered by

10   CBAs that contained specified provisions, such that those employees would receive the

11   wage protections obtained through the collective bargaining process.

12        The Legislature enacted the 1999 Act in reaction to the IWC's having amended five

13   of its wage orders to change the definition of overtime hours therein from work performed in

14   excess of eight hours in a day to work performed in excess of forty hours in a week.  See

15   Collins, 105 Cal. App. 4th at 176.  In particular, in enacting the 1999 Act, the Legislature

16   "declared the five wage orders . . . null and void" and "established a new statutory scheme

17   governing hours of labor and overtime compensation for all industries and occupations."

18   See id.  Additionally, the 1999 Act "added a series of new options for alternative

19   workweeks."  See id.  Lastly, consistent with then existing law, the 1999 Act created for all

20   employees an exemption if the employees were covered by CBAs containing specified

21   provisions, which exemption provided:  "This chapter [Labor Code §§ 500-558] does not

22   apply to an employee covered by a valid collective bargaining agreement if the agreement

23   expressly provides for the wages, hours of work, and working conditions of the employees,

24   and if the agreement provides premium wage rates for all overtime hours worked and a

25   regular hourly rate of pay for those employees of not less than 30 percent more than the

26   state minimum wage."  See 1999 Cal. Stat., ch. 134, § 8.  Nothing in the legislative history

27   _____

28        [11]Sections 750 and 750.5 were enacted in 1937 and remain in effect after the
     enactment of the 1999 Act.

10

1   suggests the Legislature, when it enacted the 1999 Act, intended to change long-standing

2   law exempting employees covered by a CBA containing such specified provisions and

3   protections.

4         The Legislature's 2001 amendment of § 514 further confirms the Legislature's intent

5   to retain such an exemption.  In 2001, § 514 was amended to replace the phrase "this

6   chapter does not apply" with "[s]ections 510 and 511 do not apply."  <u>See</u> 2001 Cal. Stat.,

7   ch. 148, § 1.  As the Ninth Circuit has explained, the purpose of the 2001 amendment was

8   to "declare[ ] that § 514 was intended to exempt workers covered by a collective bargaining

9   agreement from specified code sections relating to compensation for overtime work and

10  authorizing the adoption of an alternative workweek schedule," and to clarify that other

11  sections in the Labor Code, in particular, "the meal period provisions," were applicable to

12  employees covered by CBAs.  <u>See</u> <u>Valles v. Ivy Hill Corp.</u>, 410 F.3d 1071, 1079 (9th Cir.

13  2005); <u>see also</u> <u>Lazarin v. Superior Court</u>, 188 Cal. App. 4th 1560, 1575-76 (2011) ("[T]he

14  legislative history confirm[s] that it had never been the Legislature's intent to exclude union-

15  represented employees from any of the protections of the 1999 Restoration Act <u>other than</u>

16  <u>the overtime and alternative workweek provisions of sections 510 and 511</u>.") (emphasis

17  added).  Contrary to plaintiffs' argument, nothing in the legislative history suggests that the

18  Legislature nonetheless intended that employees covered by CBAs were not exempt

19  unless such employees worked pursuant to an alternative workweek schedule.

20        Accordingly, the Court finds § 510(a)(2) does not limit the applicability of the

21  exemption set forth in § 514.

22  **C. Summary**

23        As discussed above, there is no dispute that plaintiffs, during the course of their

24  employment with defendants, were covered by the terms of a CBA that satisfies § 514, and

25  the Court finds defendants need not satisfy § 510(a)(2) to establish the applicability of the

26  exemption set forth in § 514.

27        Accordingly, defendants are entitled to summary judgment on plaintiffs' claims for

28  overtime compensation under state law.

1

**CONCLUSION**

2          For the reasons stated above, defendants' motion for partial judgment is hereby

3   GRANTED, and plaintiffs' motion for partial summary judgment is hereby DENIED.

4          **IT IS SO ORDERED.**

5

6   Dated:  November 30, 2011

7                                                    MAXINE M. CHESNEY
                                                     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12